(164 App. Div. 253)

### McGANN v. RUGGLES-COLES ENGINEERING CO. (No. 6298.)

(Supreme Court, Appellate Division, First Department. November 6, 1914.)

1. PRINCIPAL AND AGENT (§ 81*)—COMPENSATION OF AGENT—SALES ON COMMISSION.

Under a contract whereby plaintiff was employed by defendant, whose principal office was in New York City, as an exclusive sales agent for machinery in certain territory, and was to forward all inquiries from outside his territory to defendant, who in turn was to forward to him all inquiries received by it from his territory, and whereby all sales by defendant for delivery and erection within his territory should entitle him to compensation, he was restricted to commissions upon machinery sold for erection within his territory, and a sale of machinery by defendant directly to a corporation having a main office in his territory, but for erection outside such territory did not entitle him to a commission.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 194–214, 219, 223; Dec. Dig. § 81.*]

2. PRINCIPAL AND AGENT (§ 81*)—COMPENSATION OF AGENT—SALES ON COMMISSIONS—TERRITORY.

Under such contract, as modified by renewal provisions to the effect the agent might sell machines to any purchaser whose main office was within his territory, but whose works were within the defendant's territory, and receive his profits thereon, and that when machines were sold by defendant to parties whose main offices were within defendant's territory, but were shipped into the agent's territory, the agent should be entitled to his share of the profits, he was entitled to a commission on a direct sale of machinery to a buyer whose main office was in his territory, for erection outside thereof, made directly by defendant by correspondence with the buyer's general office in the agent's territory, and also on a sale of which he was the procuring cause, made to a buyer with its main office in his territory, although the machinery was to be erected outside thereof, and on a sale to a buyer in his territory, though intended for outside territory, negotiated by him through defendant's office, but

was not entitled to commissions on a sale by defendant negotiated through a buyer's branch office in his territory, the buyer's main office being in defendant's territory, or on a sale of machines to a company whose main office was outside his territory to be installed outside of such territory.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 194–214, 219, 223; Dec. Dig. § 81.*]

Action by Robert G. McGann against the Ruggles-Coles Engineering Company, with submission of controversy pursuant to the provisions of Code Civ. Proc. §§ 1279–1281. Judgment ordered for plaintiff as directed in opinion.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

Henry M. Earle, of New York City, for plaintiff.
Charles L. Kingsley, of New York City, for respondent.

DOWLING, J.   On January 25, 1906, plaintiff entered into an agreement with the defendant whereby the former, then resident in the city of Chicago, was employed by the latter, a corporation whose principal office was in the city of New York, to act on its behalf, and was appointed by it its exclusive sales agent for the sale of dryers, drying machinery, and other special machinery in the states of Michigan, Ohio, Kentucky, Tennessee, Mississippi, and all territory lying to the west of said states, to and including the states of Montana, Wyoming, Colorado, and the territory of New Mexico, with certain other territory, for a period of five years from January 1, 1906.   Plaintiff was to faithfully and diligently represent the defendant, give prompt attention to its business, and not to sell any other dryers or drying machinery save those built by defendant.   Defendant agreed that it would forward to plaintiff all inquiries and information received by it from plaintiff's above-described territory relative to dryers, drying machinery, and other special machinery, and plaintiff in like manner was to forward to the defendant all inquiries and information received by him from sections of the United States and the countries lying without the above-described territory relative to said machinery, or any information which might be of interest to defendant.   It was further provided that plaintiff should have full power and authority to contract for the sale of the machinery in question within the said territory at such prices and terms of payment as it might deem advisable, provided that they were not below the previously estimated cost thereof.   Plaintiff was also to act as collector for defendant on moneys due on contract for work done, or machinery or supplies furnished, within the said territory.   He was to receive all necessary traveling and hotel expenses, either while procuring contracts, superintending the erection of machinery, or attending to the collection of accounts.   It was further stipulated that all sales of the dryers made by the defendant for delivery and erection within the said territory should be deemed to have been made by the plaintiff, and the profit therefrom was to be divided according to the terms of the contract.

[1]   One of the first questions presented by the controversy is wheth-

er plaintiff was entitled to a commission on a certain contract made with the Toltec Portland Cement Company, a Kansas corporation, for the erection of machinery at Tula, in the republic of Mexico. Kansas was within the plaintiff's exclusive territory; Mexico was not. Plaintiff contends that because the cement company was a Kansas corporation, and the sale effected within plaintiff's territory (in Kansas), and the contract made therein, that he was entitled to the commission thereupon. A careful examination and comparison of the various provisions of the contract between the parties satisfies us that the true intent and meaning thereof was that plaintiff should receive commission only upon such machinery sold by him as was erected within his exclusive territory. The sale was made directly between the defendant and the Toltec Company, and plaintiff's sole contention for his right to commission on this transaction is based on his allegation of the location of the main office of the buyer within his territory. Not only are we satisfied that a reasonable interpretation of this agreement was to restrict plaintiff, as has been said, to a commission upon machinery sold for erection within his exclusive territory, but that interpretation is confirmed by the second agreement between the parties, made January 1, 1911, immediately preceding the expiration of the first agreement, which second agreement, likewise for a period of five years, constituted plaintiff the exclusive sales agent of defendant for the sale of the same machinery in practically the same territory, but included a new provision, numbered seventh as follows:

"The agent may sell one or more dryers to any person or corporation whose main office is within his territory, but whose works are without the territory of the principal, receiving the same profit as specified in clause 6."

Paragraph 8 provided:

"When one or more dryers are sold by principal to party having main office within principal's territory, but the dryer is shipped into the territory of the agent, and such sale is made without the assistance of the agent, then the agent is to receive the same profit as specified in clause 6, except that the first $1,000 on the first sale or sales each year which would otherwise be paid him as specified in clause 6 shall be retained and held by the principal."

[2] The remaining questions arise under the second agreement. The first of these has to do with a contract made by defendant for the sale of a dryer to the same Toltec Portland Cement Company (whose main office was at Stafford, Kan., within the plaintiff's territory), for erection at Tula, in the republic of Mexico, without the plaintiff's territory. As this sale was made by defendant directly to the Toltec Company, as the result of correspondence and with its general manager in Mexico, and with the general offices of the corporation in Kansas, plaintiff bases his right to a commission on the agreement of defendant, contained in the contract between them, that the defendant would forward to the plaintiff all inquiries and information received by it from the plaintiff's territory. When the dryers had been shipped, they were paid for by a sight draft with bill of lading attached, drawn by defendant upon the cement company at Stafford, Kan. The draft was paid there. All the correspondence (save two letters) was had by the defendant with the cement com-

pany's office at Stafford, Kan. We think the defendant failed in its contractual duty to the plaintiff by not notifying him and forwarding to him the original inquiry, as well as the later ones which had come from his exclusive territory, and that the sale is one which is expressly covered by the provisions heretofore cited, which established his rights to commission on sales to corporations whose main office was within his territory, but whose works were outside the same. We think, therefore, that he is entitled to a commission upon the second transaction with the Toltec Portland Cement Company, amounting to $1,145.50, with interest from April 3, 1912.

Plaintiff claims a commission upon a sale made to the H. W. Johns-Manville Company upon a dryer sold to it by the defendant and erected at Manville, N. J. Plaintiff bases his claim upon the fact that he initiated the negotiations for the sale of the dryer to said company at Milwaukee, in the state of Wisconsin, which was within the plaintiff's exclusive territory; that numerous negotiations were had there by plaintiff and by the defendant's president, acting in conjunction, and that, although the sale was ultimately made in the state of New York, as the Johns-Manville Company had an office in Wisconsin, in which state they also maintained a plant, the commission was due him under the agreement. Plaintiff has not brought this transaction within the terms of his contract, for, although the purchaser had an office and plant within his territory, the main office of said company was in New York City, and therefore he is not entitled to a commission under the seventh clause of the second agreement heretofore quoted.

Plaintiff claims a commission upon a transaction had with the National Malleable Castings Company, whose main office was in the state of Ohio, within the plaintiff's territory, and which also maintains an office in Chicago, Ill., and plants in Illinois and Pennsylvania. Plaintiff initiated negotiations with the president of the company at the offices in Chicago, Ill., which is within his territory, and reported his operations to the defendant. Thereafter the office of said Malleable Castings Company at Sharon, Pa., wrote to the defendant for catalogues and prices, which were furnished, and plaintiff, who was still continuing his efforts to sell machinery to the same company for the defendant for use in its Western plants, telegraphed defendant's president, asking his help in the sale of dryers to the Eastern plant of the Castings Company, at Sharon, Pa. Thereupon the president of the defendant went to Sharon, Pa., and plaintiff procured the approval of the president of the Castings Company to the purchase there proposed, as a result of which a dryer was sold to the Castings Company's Sharon, Pa., plant. Later, through the activity of plaintiff and defendant's president, another dryer was sold for installation in the Castings Company's Illinois plant. Plaintiff has been paid his commission on the latter transaction, which was within his territory, but not for the Sharon sale, which was outside his territory. In this transaction the plaintiff was the procuring cause of the sale to a corporation whose main office was within his exclusive territory; and while the machinery was to be erected outside that territory, the case

is covered by the seventh paragraph heretofore quoted, and plaintiff is therefore entitled to a commission upon the sale in the sum of $688.-11, with interest from June 1, 1913.

Plaintiff further claims a commission upon a sale made to the American Steel Foundries, a corporation whose main office is in Chicago, Ill., within the plaintiff's exclusive territory, upon the ground of a sale made to the Quigley Furnace Company, with which said Foundries Company had a contract for the erection of a coal-pulverizing plant at Sharon, Pa., which contract included therein the installation of the dryer made by defendant. The plaintiff is not entitled to a commission upon this transaction, for the reason that the sale was not made to the Foundries Company, but to the Quigley Construction Company, whose main office is at Springfield, in the state of Massachusetts, which is outside of the plaintiff's exclusive territory, and, as the machinery was likewise installed outside his territory, under no reasonable interpretation of the contract can he claim a commission thereupon.

Plaintiff further claims a commission upon a sale made to Butterworth & Lowe, of Grand Rapids, Mich.; the machinery in question having been installed upon the plant of the Moapa Gypsum Company, at Moapa, Nev. The negotiations for this sale were initiated directly between the plaintiff and Butterworth & Lowe; but, plaintiff being at the time in the New York office of the defendant, he referred the same to the president of defendant, who carried on the correspondence which resulted in the sale of the dryer in question. It is claimed that, inasmuch as the machinery was to be installed in Nevada, which was outside the plaintiff's territory, no commission is payable. But Butterworth & Lowe were residents within the limits of plaintiff's exclusive territory, and they personally bought and paid for the machinery in question, even though it was intended for erection upon the plant of the gypsum company, for which they were general contractors and engineers. Under these circumstances we think the transaction should be treated as a sale made to a buyer whose main office was within the plaintiff's exclusive territory, even though the machinery was to be erected elsewhere, and that plaintiff is therefore entitled to his commission upon said sale, amounting to $530.37, with interest from October 1, 1913.

It follows, therefore, that plaintiff is entitled to judgment against the defendant in the sum of $2,363.98, with interest on $1,145.50 thereof from April 3, 1912, on $688.11 thereof from June 1, 1913, and on $530.37 thereof from October 1, 1913, together with the costs and disbursements of the submission. All concur.